UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| ISLAND PALM COMMUNITIES LLC; and HICKAM COMMUNITIES LLC,<br><br>          Petitioners,<br><br>   vs.<br><br>KENNY AMURO and JOSHUA BRANTLEY,<br><br>          Respondents. | CIV. NO. 24-00458 LEK-RT |

**ORDER: GRANTING IN PART AND DENYING IN PART PETITIONERS'
MOTION TO VACATE ARBITRATOR'S CLASS CERTIFICATION ORDER
OR, IN THE ALTERNATIVE, TO COMPEL INDIVIDUAL ARBITRATION;
AND DENYING RESPONDENTS' MOTION TO DISMISS**

Before the Court are: Petitioners Island Palm
Communities LLC ("Island Palm") and Hickam Communities LLC's
("Hickam Communities" and collectively "the Landlords") Motion
to Vacate Arbitrator's Class Certification Order or, in the
Alternative, to Compel Individual Arbitration ("Motion to
Vacate"); [filed 10/24/24 (dkt. no. 2);] and Respondents Kenny
Amuro ("Amuro") and Joshua Brantley's ("Brantley") Motion to
Dismiss, [filed 11/22/24 (dkt. no. 14)]. On January 31, 2025,
Amuro and Brantley filed their memorandum in opposition to the
Motion to Vacate ("Motion to Vacate Opposition"), and the
Landlords filed their memorandum in opposition to the Motion to
Dismiss ("Motion to Dismiss Opposition"). [Dkt. nos. 22, 23.] On
February 7, 2025, the Landlords filed their reply in support of

the Motion to Vacate ("Motion to Vacate Reply"), and Amuro and Brantley filed their reply in support of the Motion to Dismiss ("Motion to Dismiss Reply"). [Dkt. nos. 24, 25.] These matters came on for hearing on February 21, 2025. For the reasons set forth below, the Landlords' Motion to Vacate is hereby granted in part and denied in part, and Amuro and Brantley's Motion to Dismiss is denied. The Motion to Vacate is granted insofar as this Court vacates the contested arbitration orders as to Amuro and Brantley only. The Motion to Vacate is denied without prejudice to the extent that it seeks to vacate the contested arbitration orders as to the other claimants in the underlying arbitration. Petitioners will be permitted to file an additional motion to vacate as to other claimants as to whom diversity jurisdiction exists.

<u>**BACKGROUND**</u>

In February 2022, Brantley and others ("the Island Palm Claimants") filed a form arbitration demand against Island Palm with Dispute Prevention & Resolution, Inc. ("DPR"), and Amuro and others ("the Hickam Claimants") filed a form arbitration demand against Hickam Communities with DPR. <u>See</u> Motion Vacate, Declaration of Matthew C. Shannon ("Shannon Decl."), Exh. B (Dispute Prevention & Resolution, Inc. Demand for Arbitration by the Island Palm Claimants ("Island Palm Demand")); <u>id.</u>, Exh. C (Dispute Prevention & Resolution, Inc.

2

Demand for Arbitration by the Hickam Claimants ("Hickam Demand")).[1]

The Island Palm Demand and the Hickam Demand noted that the Island Palm Claimants and the Hickam Claimants (collectively "Arbitration Claimants") were parties "to an arbitration provision contained in a written contract/agreement" and that the claimants were "demand[ing] arbitration pursuant thereto." [Id., Exh. B (Island Palm Demand) at PageID.385; id., Exh. C (dkt. no. 2-5, Hickam Demand) at PageID.469.] The Island Palm Demand and the Hickam Demand each includes one copy of a residential lease that appears to have been submitted as a representative copy of the tenants' respective leases.

Island Palm and Jason Henke ("Henke") entered into a Residential Lease Agreement ("Henke Lease"), commencing on June 25, 2019, for a twelve-month term and continuing on a month-to-month basis thereafter.[2] See id., Exh. B (Island Palm Demand) at PageID.391-410 (Henke Lease). Brantley was identified as an authorized occupant of the leased premises. [Id. at PageID.392.] The leased premises in the Henke Lease were located at the Aliamanu Military Reservation. [Id. at PageID.391.]

---

[1] The Island Palm Demand is docket number 2-4, and the Hickam Demand was filed in two parts, docket numbers 2-5 and 2-6.

[2] Henke is not among the Island Palm Claimants. See Shannon Decl., Exh. B (Island Palm Demand) at PageID.390 (List of Claimants).

Hickam Communities and Kenny Amuro entered into a Residential
Lease Agreement ("Amuro Lease"), commencing on March 31, 2020
for a twelve-month term and continuing on a month-to-month basis
thereafter. See Shannon Decl., Exh. C (dkt. no. 2-5, Hickam
Demand) at PageID.476-99 (Amuro Lease).

        The claims in the underlying arbitration arise from
the Arbitration Claimants' exposure to water that was
contaminated as a result of a fuel leak at the United States
Department of the Navy's ("the Navy") Red Hill Bulk Fuel Storage
Facility ("Red Hill"). The Arbitration Claimants' position is
that the Landlords breached their leases by failing to prevent
the claimants' exposure to the contaminated water. See Petition
to Vacate Arbitration Award or Compel Individual Arbitration (9
U.S.C. § 10, 9 U.S.C. § 4) ("Petition"), filed 10/24/24 (dkt.
no. 1), at ¶ 16. The Henke Lease states:

> All disputes between the parties of this
> Agreement shall be resolved by mediation and/or
> binding arbitration in accordance with the terms
> and provisions of the Resident Guide. The
> prevailing party in binding arbitration and/or
> other legal process shall be entitled to recover
> its reasonable attorneys' fees and costs incurred
> in relation to the dispute from the non-
> prevailing party.

[Id., Exh. B (Island Palm Demand) at PageID.396 (Henke Lease at
¶ 17).] The Amuro Lease contains an identical provision. See
id., Exh. C (dkt. no. 2-5, Hickam Demand) at PageID.480 (Amuro
Lease at ¶ 19). The dispute resolution provisions do not

4

identify the applicable law, nor do the leases themselves contain general choice of law provisions.

In October 2022, counsel for the Arbitration Claimants, counsel for the Landlords, DPR, and Arbitrator Jerry Hiatt, Esq. ("the Arbitrator") signed an Agreement to Participate in Binding Arbitration ("DPR Agreement"). [Id., Exh. D (DPR Agreement).[3]] The DPR Agreement refers to the case as "22-0526-A: Arbitration of: Kenny Amuro, et al – and Island Hickam [sic] Communities, LLC; Hickam Communities, LLC" ("the Arbitration"). [Id.] The DPR Agreement states that: "The parties, DPR, and [the Arbitrator] agree to follow and abide by the DPR Arbitration Rules, Procedures & Protocols, as established by DPR" ("DPR Rules" or "DPR Arbitration Rules").[4] [Id.] It also provides that, "[u]nless the parties' agreement provides otherwise, the Arbitrator shall determine all issues submitted to arbitration by the parties and may grant any and all remedies that the Arbitrator determines to be just and appropriate under the law." [Id.]

---

[3] DPR's form agreement is a one-page document, but the DPR Agreement is a three-page document because of the counterpart signatures.

[4] The DPR Arbitration Rules are available on DPR's website. See DPR Rules, https://dprhawaii.com/dpr-rules/ (last visited Mar. 17, 2025), *available at* https://perma.cc/JX37-BVR2.

On December 14, 2022, the Arbitration Claimants filed a Class Arbitration Demand ("Class Demand"). [Shannon Decl., Exh. A (Class Demand).] The Class Demand asserts the following claims: breach of contract ("Claim I"); breach of the implied warranty of habitability ("Claim II"); a claim alleging violations of the Landlord Tenant Code, Hawai`i Revised Statutes Chapter 521 ("Claim III"); a claim alleging unfair and deceptive trade practices and unfair methods of competition, in violation of Hawai`i Revised Statutes Chapter 480 ("Claim IV"); and a strict liability claim ("Claim V"). [Id. at ¶¶ 26-71.]

On January 20, 2023, the Landlords filed a Motion to Dismiss Class Demand Filed December 14, 2022 ("Motion to Dismiss Class Demand"). See Shannon Decl., Exh. E (Motion to Dismiss Class Demand). The Landlords argued the Class Demand should be dismissed with prejudice because the Arbitration Claimants did not identify an unambiguous agreement to participate in class arbitration. [Id. at PageID.591.] The Landlords also argued the Federal Arbitration Act ("FAA") applied because the parties' arbitration agreement did not specifically incorporate Hawai`i Revised Statutes Chapter 658A, and the FAA prohibits an arbitrator from using a procedure that the parties did not agree to. Further, even if Chapter 658A would otherwise apply, the FAA preempts incompatible state laws. [Id.]

6

I.    <u>**Order No. 4**</u>

        The Arbitrator held a hearing on the Motion to Dismiss

Class Demand on March 17, 2023, and denied that motion in an

order issued on May 31, 2023. <u>See</u> Shannon Decl., Exh. F

(Arbitrator Order No. 4 Denying Motion to Dismiss Class

Arbitration Demand [Filed December 14, 2022] ("Order No. 4"));

<u>id.</u> at § I (noting the arbitrator held a hearing on the Motion

to Dismiss Class Demand).

        In Order No. 4, the Arbitrator noted that one of the

Landlords' main arguments was based upon the United States

Supreme Court's holding that "[c]ourts may not infer consent to

participate in class arbitration absent an affirmative

contractual basis for concluding that the parties **agreed** to do

so." <u>See</u> <u>Lamps Plus, Inc. v. Varela</u>, 587 U.S. 176, 185, 139 S.

Ct. 1407, 1416 (2019) (citation and internal quotation marks

omitted)); <u>see also</u> Shannon Decl., Exh. F (Order No. 4) at

¶ II.2 (referring to this principle as "the Lamps Plus Test").

        The Arbitrator found that, where the leases between

the Arbitration Claimants and the Landlords had arbitration

provisions, the leases had no express consent to class

arbitration, and therefore the arbitration clauses did not meet

the Lamps Plus Test. [Shannon Decl., Exh. F (Order No. 4) at

¶ II.3 (noting the Arbitration Claimants' argument that only

some of the leases had arbitration clauses), ¶ II.4 (finding

7

that the leases cited by the parties did not contain express consent to class arbitration).] However, the Arbitrator found that "the sum of the Parties' subsequent written agreements do meet the Lamps Plus Test." [Id. at ¶ II.5.]

The Arbitrator based this finding upon: the DPR Agreement; [id. at ¶¶ II.6-8;] the DPR Rules, which the signatories to the DPR Agreement agreed applied to the Arbitration; [id. at ¶ II.9;] and the parties' agreements that were reflected in Arbitration Order No. 2,[5] [id. at ¶ II.24]. The Arbitrator also relied upon: Hawai`i Revised Statutes Chapter 658A; [id. at ¶¶ II.12, II.16, II.22;] Hawai`i case law regarding arbitration; [id. at ¶¶ II.26-27;] the fact that counsel on both sides were "highly experienced"; [id. at ¶ II.37;] and the fact that "a class arbitration had been requested in a pending federal court proceeding," [id.].

The Arbitrator found that, because the DPR Agreement was provided to the parties' counsel in Word format, they had the opportunity to make changes to the agreement before executing it, but no party did so. Further, counsel confirmed that they executed the DPR Agreement with authority from their

---

[5] The Arbitrator's Order No. 2 Re: Respondents' Motion to Dismiss, dated January 3, 2023 ("Order No. 2") is attached to Order No. 4 as Exhibit 3. [Shannon Decl., Exh. F (Order No. 4) at PageID.700-02 (Order No. 2).]

respective clients. The Arbitrator found the DPR Agreement was valid and binding as to all parties. [Id. at ¶¶ II.6-8.]

DPR Rule 1 permits parties to enter into a written agreement to modify the DPR Rules, but there was no modification agreement between the Arbitration Claimants and the Landlords. [Id. at ¶ II.18.] Under DPR Rule 35, the Arbitrator determines the meaning and intent of the DPR Rules. [Id. at ¶ II.19.]

The Arbitrator concluded that Hawai`i Revised Statutes Chapter 658A, which the Arbitrator referred to as the Revised Uniform Arbitration Act ("RUAA"), applied to the parties' Arbitration because the DPR Rules state they are to be interpreted and applied according to Chapter 658A unless the parties agreed to the contrary in writing. Because the Arbitration Claimants and the Landlords did not have an agreement specifying the applicable law, the Arbitrator found that Chapter 658A was incorporated into the DPR Agreement. [Id. at ¶ II.16.]

The Arbitrator noted that the DPR Agreement and Rule 30 of the DPR Rules both stated: "Unless the parties' agreement provides otherwise, the Arbitrator shall determine all issues submitted to arbitration by the parties and may grant any and all remedies that the Arbitrator determines to be just and appropriate under the law." [Id. at ¶¶ II.10-11.] The Arbitrator found that the DPR Agreement was a valid and enforceable

9

agreement to arbitrate that complies with Hawai`i Revised
Statutes Section 658A-6. [Id. at ¶ II.12.] Further, the
Arbitrator found that the DPR Agreement did not exclude class
arbitration from the issues and remedies that were for the
Arbitrator to decide. [Id. at ¶ II.14.]

    The Arbitrator also noted that the DPR Rules require
parties to submit their dispute for arbitration through a
submission agreement, using a form available on the DPR website
or by drafting their own agreement. The Arbitrator pointed out
that "[t]he Parties here utilized the DPR form, which does not
exclude class arbitration,"[6] and they did not have another
agreement excluding class arbitration. [Id. at ¶ II.17.]

    Thus, the Arbitrator found:

    In light of the close attention that was paid to
    the class arbitration issue in the existing
    record of this case prior to the execution of the
    Arbitration Agreement; the fact that DPR
    routinely handles class arbitrations; the lack of
    any specification otherwise in the Arbitration
    Agreement and the lack of any specification
    otherwise in an amendment to the DPR Rules, the
    Arbitrator finds that **both the Arbitration
    Agreement and DPR Rules, independently and taken
    together, permit class arbitration of this**

---

    [6] The DPR submission form is available at Clauses,
https://dprhawaii.com/clauses/ (last visited Mar. 17, 2025),
*available at* https://perma.cc/PLA8-PYZK. The Island Palm Demand
and the Hickam Demand each contains a submission form, but both
forms are only signed by the Island Palm Claimants' counsel and
the Hickam Claimants' counsel, not by Island Palm's counsel or
Hickam Communities' counsel. See Shannon Decl., Exh. B (Island
Palm Demand) at PageID.388; id., Exh. C (dkt. no. 2-5, Hickam
Demand) at PageID.472.

> **matter**. Thus, if Claimants are able to meet the
> relevant criteria required for class treatment
> the Arbitrator finds that this case is one which
> is appropriate for class treatment.

[Id. at ¶ II.20 (emphasis added).]

To further support his finding that the parties agreed
to class arbitration, the Arbitrator cited Order No. 2, which
stated:

> At the outset of the [November 14, 2022] hearing
> [on the Landlords' Motion to Dismiss Class
> Demand], the Arbitrator questioned counsel on
> various issues and topics, and upon further
> consideration, the Parties agree as follows:
>
> 1.    The Parties agree to arbitration before
> Dispute Prevention & Resolution, Inc.
> ("DPR") and that DPR Rules shall apply,
> except as follows:
>
> > a.    Landlords' position is that the
> > Federal Arbitration Act is the
> > applicable law; Tenants' position is
> > that HRS Chapter 658A is the applicable
> > law.
> >
> > b.    Landlords' position is that the
> > parties are in arbitration pursuant to
> > Tenants' leases; Tenants' position is
> > that the parties are in arbitration
> > pursuant to an agreement other than the
> > leases.
>
> 2.    The Parties agree all leases at issue
> are residential leases that relate to the
> rental of real property in the State of
> Hawaii.
>
> > a.    Landlords do not waive any
> > arguments or defenses that relate to
> > applicable law, jurisdiction, or any
> > other legal defenses that may apply.

3.   The Parties agree the Arbitrator holds
jurisdiction and authority to decide whether
or not this case may proceed as a class
arbitration.

a.   Landlords reserve all rights and
legal arguments, including the right to
seek judicial review in accordance with
applicable law.

4.   The Parties agree all persons
identified as Claimants and who are
residents of Claimants' leased households
are part of this arbitration.

5.   Claimants' amended class pleading does
not amend their individual claims, as
reflected in their August 8, 2022,
Arbitration Demand.

Shannon Decl., Exh. F (Order No. 4) at PageID.701-02 (second and

third pages of Order No. 2); see also id. at ¶ II.24

(summarizing paragraphs 1-4 of Order No. 2). The Arbitrator

emphasized that the parties agreed that he would decide whether

the proceeding would be a class arbitration, and the parties

agreed the named claimants as well as all residents in the named

claimants' leased households were part of the Arbitration. [Id.

at ¶ II.25.] Further, "the agreements made in this arbitration

are the only agreements which actually work to bring all of the

relevant parties into one proceeding where all of the claims and

defenses between all of the relevant parties can be effectively

addressed." [Id.]

The Arbitrator also found that the right to pursue a

class action was among the remedies that were within an

arbitrator's authority to order where it is appropriate under the circumstances of the proceeding. Id. at ¶¶ II.22 & II.28 (both citing Haw. Rev. Stat. § 658A-21(c)); see also id. at ¶ II.22 (citing the online New Oxford American Dictionary for the plain and ordinary meaning of the word "remedies"). In the event of a later determination that the right to pursue a class action is not a remedy for purposes of Section 658A-21(c), the Arbitrator noted the availability of class relief was clearly an issue that the parties agreed to submit to arbitration. [Id. at ¶ II.28.]

The Arbitrator stated that, under DPR Rule 30, no interim ruling, order, or award could be confirmed as a final award pursuant to Section 658A-25, nor could it be modified, vacated, or corrected pursuant to Sections 658A-23 and 658A-24. The Arbitrator found that Order No. 4 could only be subject to judicial review after a final award was issued. [Id. at ¶ II.21.]

The Arbitrator also noted that, if the FAA applied instead of Chapter 658A, "class arbitration is not at all inconsistent with the terms of the FAA. The FAA requires that there be an agreement between the parties to arbitrate. The FAA contains no language which expressly bars a class arbitration." [Id. at ¶ II.29.] Further, the Arbitrator concluded that Lamps Plus was distinguishable because: Hawai`i case law strongly

13

supports arbitration; Lamps Plus did not involve specific state
arbitration law like Chapter 658A; [id. at ¶¶ II.32-34;] Lamps
Plus did not involve the type of agreements that the Arbitration
Claimants and the Landlords had, which "expressly and
unambiguously required them to exclude class arbitration if they
did not wish to participate in such a proceeding"; [id. at
¶ II.35;] and Lamps Plus did not involve a stipulation that the
arbitrator could decide whether the Arbitration would be
conducted on a class basis, [id. at ¶ II.36]. The Arbitrator
also stated the parties' agreement to arbitrate the issue of
class arbitrability was considered

> in a context where a class arbitration had been
> requested in a pending federal court proceeding
> and where a very simple process existed to avoid
> a class arbitration, but that process was never
> pursued by either Party. Here also the executed
> DPR Agreement and the DPR Rules and the
> applicable statute all permit class arbitrations
> and such class arbitrations have been previously
> conducted by DPR.

[Id. at ¶ II.37.]

The Arbitrator denied the Motion to Dismiss Class
Demand with prejudice, [id. at ¶ III.40,] but did not make any
ruling regarding the issue of class certification, [id. at
¶ III.44].

## II.  Order No. 11

The Arbitration Claimants filed a Motion for Class
Certification on July 8, 2024, and the Arbitrator held a hearing

14

on the motion on August 12, 2024. <u>See</u> Shannon Decl., Exh. G
(Arbitrator Order No. 11 Granting Claimants' Motion for Class
Certification, Filed July 8, 2024 ("Order No. 11")) at pg. 1.
Order No. 11 incorporates by reference all of the Arbitrator's
prior orders on motions filed in the Arbitration. [<u>Id.</u> at
¶ I.7.] In particular, the Arbitrator summarized and reaffirmed
Order No. 4. <u>See</u> <u>id.</u> at ¶ II.2. The Arbitrator again found that
"the Parties had expressly agreed to the possibility of this
class arbitration." [<u>Id.</u>]

        The Arbitrator noted the Landlords managed 4,147 homes
that the Landlords supplied with drinking water from the Navy's
Joint Base Pearl Harbor Hickam water system. <u>See</u> <u>id.</u> at ¶¶ I.1-
2. The Arbitration Claimants sought certification, pursuant to
Hawai`i Rule of Civil Procedure 23(a) and (b)(3), of a class
consisting of: "All persons authorized to reside within Hickam
Communities, Aliamanu Military Reservation, and Red Hill from
November 1, 2021, to March 31, 2022." [<u>Id.</u> at ¶ I.4 (emphasis
omitted).]

        The Arbitrator found that the proposed class satisfied
the Hawai`i Rule of Civil Procedure 23(a) requirements of
numerosity, commonality, and typicality, and that the proposed
class representatives met the adequacy requirement. Further, the
Arbitrator found that the Rule 23(b)(3) requirements were met.
[<u>Id.</u> at ¶¶ II.6-6.E.] The Arbitrator also found that the

15

certification of the class was "in the best interests of judicial/arbitral economy to resolve the questions of law and fact shared by Claimants." [Id. at ¶ II.6.F.]

## III. **The Instant Case**

The Landlords filed their Petition in this district court on October 24, 2024. [Dkt. no. 1.] They argue jurisdiction exists based on Title 9 United States Code Sections 4 and 10, and Title 28 United States Code Section 1332(a) because Hickam Communities and Island Palm are diverse from Amuro and Brantley, and the amount in controversy requirement is satisfied. See Petition at ¶¶ 13.a-14.c.

The Petition seeks the same relief as the Motion to Vacate: a court order vacating Arbitration Orders No. 4 and No. 11 pursuant to Title 9 United States Code Section 10; and, in the alternative, a court order compelling arbitration according to the parties' arbitration agreements pursuant to Title 9 United States Code Section 4. Compare id. at ¶¶ 4-5, with Motion to Vacate at 2. The Landlords argue the Arbitrator exceeded his powers by ordering that Amuro and Brantley's claims be arbitrated on a class-wide basis. [Motion to Vacate at 2.]

In the Motion to Dismiss, Amuro and Brantley argue the case should be dismissed because the Landlords failed to plead a basis for federal jurisdiction. [Motion to Dismiss, Mem. in Supp. at 2.] Amuro and Brantley also argue the parties expressly

16

agreed that the Arbitrator would decide the threshold issue of

class arbitrability, and the Landlords cannot seek review of the

Arbitrator's interim orders merely because the Landlords

disagree with the results. [Id. at 2-3.]

## DISCUSSION

### I.  Jurisdiction

The Landlords seek relief under the FAA, Title 9

United States Code Sections 4 and 10. See Petition at ¶¶ 11-12.

The FAA states:

> A written provision in any maritime transaction
> or a contract evidencing **a transaction involving**
> **commerce** to settle by arbitration a controversy
> thereafter arising out of such contract or
> transaction, or the refusal to perform the whole
> or any part thereof, or an agreement in writing
> to submit to arbitration an existing controversy
> arising out of such a contract, transaction, or
> refusal, shall be valid, irrevocable, and
> enforceable, save upon such grounds as exist at
> law or in equity for the revocation of any
> contract or as otherwise provided in chapter 4.

9 U.S.C. § 2 (emphasis added).

The Landlords ask this Court to review orders that

were issued in the Arbitration, which was initiated based on the

Henke Lease and the Amuro Lease. See Shannon Decl., Exh. B

(Island Palm Demand) at PageID.391-410 (Henke Lease); id.,

Exh. C (dkt. no. 2-5, Hickam Demand) at PageID.476-99 (Amuro

Lease). This Court considered substantively identical leases

that other tenants had with Hickam Communities and Island Palm

17

and concluded that the FAA applied to the leases. <u>See</u> <u>Jabour v.</u>
<u>Hickam Cmtys., LLC</u>, CIV. NO. 24-00001 LEK-KJM, 2024 WL 4262476,
at *1-2 (D. Hawai`i Sept. 20, 2024) (describing the plaintiffs'
lease with Hickam Communities and the plaintiffs' claims related
to the Red Hill fuel release); <u>id.</u> at *6 (concluding the FAA
applied to the plaintiffs' lease with Hickam Communities because
the lease was "'a contract evidencing a transaction involving
commerce'" (quoting 9 U.S.C. § 2)); <u>Martin v. Island Palm</u>
<u>Cmtys., LLC</u>, CIV. NO. 24-00006 LEK-KJM, 2024 WL 4267684, at *1-
2, *5 (D. Hawai`i Sept. 23, 2024) (same as to Island Palm). For
the reasons stated in <u>Jabour</u> and <u>Martin</u>, this Court concludes
that the FAA applies to the Amuro Lease and the Henke Lease are
"contract[s] evidencing a transaction involving commerce."

        "The FAA provides a mechanism for enforcing domestic
arbitration agreements, but it does not bestow subject matter
jurisdiction. A federal court must therefore identify some other
jurisdictional ground." <u>Sexton v. Xerox Corp.</u>, Civil No. 24-
00188 MWJS-RT, 2024 WL 4201186, at *1 n.1 (D. Hawai`i Sept. 16,
2024) (citing <u>Hall St. Assocs., L.L.C. v. Mattel, Inc.</u>, 552 U.S.
576, 581-82 (2008)). In the instant case, the jurisdictional
ground that the Landlords rely upon is diversity jurisdiction
pursuant to Title 28 United States Code Section 1332(a). <u>See</u>

Petition at ¶ 13.[7] Section 1332(a) states, in pertinent part:
"The district courts shall have original jurisdiction of all
civil actions where the matter in controversy exceeds the sum or
value of $75,000, exclusive of interest and costs, and is
between - (1) citizens of different States[.]" Section 1332(a)
"requires 'complete diversity' of citizenship, meaning that 'the
citizenship of each plaintiff is diverse from the citizenship of
each defendant'" Demarest v. HSBC Bank USA, N.A., 920 F.3d 1223,
1226 (9th Cir. 2019) (quoting Caterpillar Inc. v. Lewis, 519
U.S. 61, 68, 117 S. Ct. 467, 136 L. Ed. 2d 437 (1996))).

### A.    **Diversity of Citizenship**

The Landlords argue there is complete diversity of
citizenship between the Landlords and Amuro and Brantley:

> a.   Because Petitioner Hickam is an LLC, its
>      citizenship is based on the citizenship of
>      its owners/members. Hickam's sole member is
>      HCH Sole Member LLC. HCH Sole Member LLC is
>      an LLC whose sole member is Lendlease (US)
>      Public Partnerships Holdings LLC, which in
>      turn is an LLC whose sole member is
>      Lendlease Americas Inc. Lendlease Americas
>      Inc. is a Delaware corporation with its
>      principal place of business in New York,
>      making it a citizen of Delaware and New
>      York.
>
> b.   Because Petitioner Island Palm Communities
>      is an LLC, its citizenship is based on the

---

[7] Even if Amuro and Brantley were correct that the FAA does
not apply and the Landlords should have brought the instant
Petition pursuant to Hawai`i Revised Statutes Chapter 658A, the
basis for federal jurisdiction would still be diversity
jurisdiction.

citizenship of its owners/members. IPC's
sole member is AHFH Managing Member LLC.
AHFH Managing Member LLC is an LLC whose
sole member is Lendlease (US) Asset
Management LLC. Lendlease (US) Asset
Management LLC is an LLC whose sole member
is LLG Asset Management LLC. LLG Asset
Management LLC is an LLC whose members are
Glam MILHSG Fee LLC and Lendlease
Communities Capital LLC, which in turn both
have the same sole member, Lendlease (US)
Public Partnership Holdings LLC. Lendlease
(US) Public Partnership Holdings LLC is an
LLC whose sole member is Lendlease Americas
Inc. Lendlease Americas Inc. is a Delaware
corporation with its principal place of
business in New York, making it a citizen of
Delaware and New York.

c.    [Amuro and Brantley] are not citizens of
Delaware or New York.

[Petition at ¶¶ 13.a-c.]

Because Hickam Communities and Island Palm are LLCs,
for purposes of diversity jurisdiction, each "is a citizen of
every state of which its owners/members are citizens, not the
state in which it was formed or does business." See Voltage
Pictures, LLC v. Gussi, S.A. de C.V., 92 F.4th 815, 822 (9th
Cir. 2024) (citation and quotation marks omitted). Amuro and
Brantley do not dispute that Hickam Communities and Island Palm
are each owned by a series of sole-member LLCs, and that
Lendlease Americas Inc. ("Lendlease") is the ultimate owner of
both Hickam Communities and Island Palm. See, e.g., Motion to
Dismiss, Mem. in Supp at 1 (referring to Island Palm and Hickam
Communities collectively as "Lendlease"). Amuro and Brantley

20

argue the Landlords attempted to artificially create diversity jurisdiction by abandoning the position that Island Palm and Hickam Communities asserted in previous cases that Tennessee was Lendlease's principal place of business and by "nam[ing] only two claimants out of more than a thousand to allege diversity." [Id. at 2.]

### 1.    Lendlease's Citizenship

Amuro and Brantley point out that a class action was previously commenced on December 31, 2021 in the State of Hawai`i First Circuit Court ("the state court"), Casey et al. v. Ohana Military Communities, LLC et al., Civil No. 1CCV-21-0001618, but Island Palm and Hickam Communities removed the case to this district court on January 24, 2022, and it was assigned Case Number CV 22-00039 HG-RT ("CV 22-039").[8] [Motion to Dismiss, Mem. in Supp. at 4 & nn.11-12.] In the notice of removal, Island Palm and Hickam Communities stated they were "incorporated in the State of Delaware; and . . . have their principal place of business in Nashville, Tennessee." [CV 22-039, Defendants Island

---

[8] CV 22-039 was transferred to this Court and consolidated with Casey et al. v. Ohana Military Communities, LLC et al., CV 22-00037 LEK-WRP ("CV 22-037"), which was opened when Ohana Military Communities, LLC and Hunt MH Property Management, LLC filed their notice of removal regarding Civil No. 1CCV-21-0001618. See CV 22-039, EO, filed 2/10/22 (dkt. no. 6). The consolidated case was later voluntarily dismissed. See CV 22-037, Plaintiffs Michael Casey, Payton Lamb, and Jamie Williams' Notice of Voluntary Dismissal, filed 3/9/22 (dkt. no. 23).

Palm Communities, LLC and Hickam Communities, LLC's Notice of
Removal, filed 1/24/22 (dkt. no. 1), at pg. 8.]

There is no inconsistency between the Landlords'
citizenship position in this case and the position taken in
CV 22-039 because the removal in CV 22-039 was based on the
Class Action Fairness Act ("CAFA"). [Id. at pgs. 4-9.] For
purposes of CAFA, "an unincorporated association [is] deemed to
be a citizen of the State where it has its principal place of
business and the State under whose laws it is organized." 28
U.S.C. § 1332(d)(10). This district court has stated:

> Although an LLC ordinarily shares the
> citizenships of all of its owners/members in
> diversity cases, see Johnson v. Columbia Props.
> Anchorage, LP, 437 F.3d 894, 899, 902 (9th Cir.
> 2006), courts treat LLCs as unincorporated
> associations under CAFA, so they are citizens of
> the states under whose laws they are organized
> and the states where they have their principal
> places of business. See 28 U.S.C. § 1332(d)(10);
> Ramirez v. Carefusion Res., LLC, Case No.: 18-cv-
> 2852-BEN-MSB, 2019 WL 2897902, at *2 (S.D. Cal.
> July 5, 2019) ("In the Ninth Circuit, whether an
> LLC is 'an unincorporated association' for CAFA
> purposes under § 1332(d)(10) remains an open
> question. Nonetheless, the Fourth Circuit" has
> "expressly held that an LLC is properly
> considered an 'unincorporated association' within
> the meaning of § 1332(d)(10)" and "most courts to
> consider the issue have reached the same
> conclusion, finding that § 1332(d)(10) applies to
> all types of non-corporate business entities."
> (citations omitted)); Jack v. Ring LLC, 553 F.
> Supp. 3d 711, 714-16 (N.D. Cal. 2021).

Lethgo v. CP IV Waterfront, LLC, CIVIL NO. 22-00052 JAO-WRP,
2022 WL 2177125, at *6 (D. Hawai`i June 16, 2022). Thus, the

22

citizenship analysis for purposes of diversity jurisdiction is
not the same as the citizenship analysis for purposes of CAFA
jurisdiction.

In denying the motion to remand in Jabour, this Court
concluded that Hickam Communities was a citizen of Delaware and
New York for purposes of diversity jurisdiction, but that Hickam
Communities was a citizen of Delaware and Tennessee for purposes
of CAFA. See Jabour v. Hickam Cmtys., LLC, CIV. NO. 24-00001
LEK-KJM, 2024 WL 2272715, at *5, *10 (D. Hawai`i May 20, 2024).
Similarly, this Court concluded that Island Palm was a citizen
of Delaware and New York for purposes of diversity jurisdiction,
but this Court ruled that there was insufficient evidence in
that case to determine Island Palm's citizenship for purposes of
CAFA. See Martin v. Island Palm Cmtys., LLC, CIV. NO. 24-00006
LEK-KJM, 2024 WL 2272718, at *5, *11 (D. Hawai`i May 20, 2024).

Because CAFA is not implicated in the instant case,
this Court rejects Amuro and Brantley's argument that the
Landlords attempted to manufacture jurisdiction by asserting
citizenship that differed from the citizenship asserted in
CV 22-039. This Court concludes that the Landlords are citizens
of Delaware and New York for purposes of diversity jurisdiction.

### 2.    Which Claimants' Citizenship Must Be Considered

In determining whether an action brought under Title 9
United States Code Sections 9 or 10 has an independent

23

jurisdictional basis, a court starts by considering "the face of
the application itself. If it shows that the contending parties
are citizens of different States (with over $75,000 in dispute),
then § 1332(a) gives the court diversity jurisdiction." <u>Badgerow</u>
<u>v. Walters</u>, 596 U.S. 1, 9 (2022). Amuro and Brantley do not
suggest that they are citizens of either Delaware or New York.
Instead, Amuro and Brantley argue the Landlords attempted to
manufacture diversity of citizenship by only naming two
respondents in this case. Amuro and Brantley argue that, because
the Arbitrator certified a class, the citizenship of all class
members must be considered. They assert the Landlords cannot
establish complete diversity because there are numerous class
members who are residents of New York. <u>See</u> Motion to Dismiss,
Mem. in Supp. at 13 & n.37 (citing Motion to Dismiss, Mem. in
Supp. Exh. 10 (Declaration of FTCA Counsel)).

> However, "the citizenship of someone not
> before the court is irrelevant to the
> jurisdictional inquiry." <u>Circuit City Stores,</u>
> <u>Inc. v. Najd</u>, 294 F.3d 1104, 1106 (9th Cir.
> 2002). Courts cannot "look through" a Federal
> Arbitration Act ("FAA") petition to compel
> arbitration to examine the parties' underlying
> state court dispute to determine whether there is
> diversity jurisdiction. <u>See</u> <u>id.</u>; <u>CarMax Auto</u>
> <u>Superstores California LLC v. Hernandez</u>, 94 F.
> Supp. 3d 1078, 1094, 1095, 1095 n.42 (C.D. Cal.
> 2015) (distinguishing **diversity** from **federal**
> **question** jurisdiction in regard to the "look
> through" approach and noting this trend is
> followed other district and circuit courts); <u>see</u>
> <u>also</u> <u>Northport Health Servs. of Arkansas, LLC v.</u>
> <u>Rutherford</u>, 605 F.3d 483, 491 (8th Cir. 2010)

> ("[W]e conclude that diversity of citizenship is
> determined in these cases by the citizenship of
> the parties named in the proceedings before the
> district court, plus any indispensable parties
> who must be joined pursuant to Rule 19."); Bank
> Leumi, USA v. Miramax Distribution Servs., LLC,
> No. 2:18-cv-07574-SVW-KS, 2019 WL 7865180, at *1
> (C.D. Cal. Oct. 31, 2019) (quoting Hermes of
> Paris, Inc. v. Swain, 867 F.3d 321, 324 (2d Cir.
> 2017)) ("In evaluating whether the requirement of
> complete diversity is satisfied, a court
> assessing its jurisdiction over an FAA petition
> is to 'look[] only to the citizenship of the
> parties in the action before it' — that is, the
> 'parties to the petition to compel' as well as
> any indispensable parties who must be joined
> pursuant to Federal Rule of Civil
> Procedure 19.").

Savills Inc. v. Musgjerd, Case No. 20-cv-904-MMA(BLM), 2020 WL
4365903, at *4 (S.D. Cal. July 30, 2020) (alterations and
emphases in Savills Inc.). Although Savills Inc. involved a
petition to compel arbitration and an underlying state court
action, the analysis is applicable to the instant case, which
primarily involves a motion to vacate orders in an underlying
arbitration. This Court will therefore only consider the
citizenship of the named parties in the Landlords' Petition and
any indispensable parties.

> Rule 19(a) provides that an absent party is
> necessary or "required" if "disposing of the
> action in the person's absence may . . . impair
> or impede the person's ability to protect" an
> interest "relating to the subject of the action."
> Fed. R. Civ. P. 19(a)(1). To qualify as a legally
> protected interest under Rule 19, the interest
> must be "more than a financial stake, and more
> than speculation about a future event." Makah
> Indian Tribe v. Verity, 910 F.2d 555, 558 (9th

25

> Cir. 1990) (citation omitted). A party's interest
> in enforcing compliance with administrative
> procedures is not sufficient, see <u>Cachil Dehe
> Band of Wintun Indians of the Colusa Indian Cmty.
> v. California</u>, 547 F.3d 962, 971 (9th Cir. 2008),
> but "an absent party may have a legally protected
> interest at stake in procedural claims where the
> effect of a plaintiff's successful suit would be
> to impair a right already granted," <u>Dine Citizens
> Against Ruining Our Env't v. Bureau of Indian
> Affs.</u>, 932 F.3d 843, 852 (9th Cir. 2019). "[A]n
> interest that 'arises from terms in bargained
> contracts' may be protected," if that interest is
> "substantial." <u>Cachil</u>, 547 F.3d at 970 (quoting
> <u>Am. Greyhound Racing, Inc. v. Hull</u>, 305 F.3d
> 1015, 1023 (9th Cir. 2002)).

<u>Mont. Wildlife Fed'n v. Haaland</u>, 127 F.4th 1, 48–49 (9th Cir.

2025) (alterations in <u>Mont. Wildlife</u>).

Disposing of the instant case in the absence of the

other Arbitration Claimants and the unnamed class members would

not impair or impede their ability to protect their interests in

the Arbitration. This action is only based upon the Amuro Lease

and the Henke Lease, both of which contained arbitration

provisions. <u>See, e.g.</u>, Petition at ¶¶ 10, 17. Further, this

Court cannot make rulings regarding all of the Arbitration

Claimants, let alone all of the class members. The record

indicates there are some claimants who are not similarly

situated to Amuro and Brantley because they did not have leases

containing arbitration clauses. <u>See, e.g.</u>, Motion to Dismiss

Reply, Exh. 2 (Tenant Lease (Active Duty Military Member)

between Michael Casey and Hickam Communities, commencing on

April 18, 2016 for a twelve-month term, and automatically
renewing for subsequent twelve-month terms until terminated by
either party ("Casey Lease")) at ¶ 14 ("Without limiting the
rights and remedies of the Tenant and the Landlord under
applicable laws, the Tenant and the Landlord may refer disputes
to the Privatization Flight Chief, Joint Base Pearl Harbor-
Hickam for resolution.").[9] This Court therefore has only
considered the issues in the Motion to Vacate as to Amuro and
Brantley. Absent other action, the other Arbitration Claimants
are able to proceed in the Arbitration pursuant to the
Arbitrator's orders, including Order No. 4 and Order No. 11. In
light of that limitation on the instant Order, this Court
concludes that neither the other Arbitration Claimants nor the
unnamed class members are indispensable parties who must be
joined pursuant to Rule 19.

Only the Landlords' citizenship and Amuro's and
Brantley's respective citizenships are relevant to the
determination of whether there is complete diversity in the

---

[9] Mike Casey is one of the Hickam Claimants. He appears to
be the Michael Casey who executed the Casey Lease. Compare
Shannon Decl., Exh. C (dkt. no. 2-5, Hickam Demand) at
PageID.474 (List of Claimants, including Mike Casey's address),
with Motion to Dismiss Reply, Exh. 2 (Casey Lease) at ¶ 1
(identifying the leased premises). However, this Court notes
that the List of Claimants indicates that Mike Casey signed a
lease dated July 6, 2020. This Court cannot speculate regarding
the terms of that lease.

instant case. Because the Landlords are citizens of Delaware and
New York for purposes of diversity jurisdiction, and Amuro and
Brantley are not citizens of either Delaware or New York, this
Court concludes that there is complete diversity among the
parties in this case.

> **B.    Amount in Controversy**

The Petition asks this Court to: vacate the
Arbitrator's Order No. 4 and Order No. 11 to the extent that the
orders permit Amuro and Brantley to litigate their claims in a
class arbitration; and, in the alternative, compel Amuro and
Brantley to participate in individual arbitration. The Landlords
assert "the object of this litigation alone — the proper
enforcement of the arbitration provision — exceeds
$75,000. . . . The economic value of a Lease providing for
individual arbitration, as compared to one providing for
classwide arbitration, exceeds $75,000." [Petition at ¶ 14.c.]

> When a plaintiff invokes federal-court
> jurisdiction, the plaintiff's amount-in-
> controversy allegation is accepted if made in
> good faith. See, e.g., Mt. Healthy City Bd. of
> Ed. v. Doyle, 429 U.S. 274, 276 (1977) ("'[T]he
> sum claimed by the plaintiff controls if the
> claim is apparently made in good faith.'"
> (quoting St. Paul Mercury Indemnity Co. v. Red
> Cab Co., 303 U.S. 283, 288 (1938); alteration in
> original)).[10] Similarly, when a defendant seeks

---

[10] Mount Healthy City and Saint Paul were superseded by
statute on other grounds. See, e.g., Rivera v. United States,
924 F.2d 948, 954 n.7 (9th Cir. 1991) (regarding Mt. Healthy
(. . . continued)

> federal-court adjudication, the defendant's
> amount-in-controversy allegation should be
> accepted when not contested by the plaintiff or
> questioned by the court. . . .

Dart Cherokee Basin Operating Co. v. Owens, 574 U.S. 81, 87
(2014).

The Landlords are the petitioners in this action, and
there is no indication that the amount-in-controversy allegation
in paragraph 14.c of the Petition was made in bad faith. Even if
this Court scrutinizes the Landlords' amount-in-controversy
allegation as if the Landlords were defendants because they are
the respondents in the underlying Arbitration, Amuro and
Brantley have not contested the Landlords' allegation in
paragraph 14.c. See Motion to Vacate Opp. at 6-7 & n.17
(disputing only the Landlords' argument in paragraph 14.b of the
Petition). Further, this Court finds no basis to question the
Landlord's amount-in-controversy allegation in paragraph 14.c of
the Petition.

This Court therefore accepts the Landlord's amount-in-
controversy allegation in paragraph 14.c and concludes that that
the amount-in-controversy requirement for diversity jurisdiction
is satisfied. See 28 U.S.C. § 1332(a).

---

City); Malkan v. Omni Hotels Mgmt. Corp., No. CV-20-00060-TUC-
JGZ, 2021 WL 86768, at *6 n.5 (D. Ariz. Jan. 11, 2021)
(regarding St. Paul), aff'd, No. 21-15067, 2021 WL 4902359 (9th
Cir. Oct. 21, 2021).

C.     **Timeliness**

Under the FAA, "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. The Landlords filed the Petition on October 24, 2024. Order No. 4 was issued on May 31, 2023, and Order No. 11 was issued on September 29, 2024. The Petition was filed within three months after the Arbitrator issued Order No. 11, but more than a year after the Arbitrator issued Order No. 4. In the Motion to Dismiss Reply, Amuro and Brantley argue the Landlords' challenge to Order No. 4 "is untimely and inequitable." [Motion to Dismiss Reply at 11.] Because Amuro and Brantley raised this argument for the first time in their reply, the argument can be rejected on that basis alone. See Local Rule LR7.2 ("Any argument raised for the first time in the reply shall be disregarded.").

Even if Amuro and Brantley had raised the timeliness argument in the Motion to Dismiss, this Court would have rejected the argument. The Ninth Circuit has stated that, under the FAA, "judicial review prior to the rendition of a final arbitration award should be indulged, if at all, only in the most extreme cases." Aerojet-Gen. Corp. v. Am. Arb. Ass'n, 478 F.2d 248, 251 (9th Cir. 1973). The Ninth Circuit also stated, "[e]xtreme cases can be imagined in which the choice of locale

30

for arbitration is not made in good faith and severe irreparable injury is inflicted on one or more of the parties." Id. The Ninth Circuit has described Aerojet-General as "quite close" to "a blanket rule precluding intervention in an ongoing arbitration." In re Sussex, 781 F.3d 1065, 1073 (9th Cir. 2015). Since Aerojet-General, the Ninth Circuit has not decided an appeal that "approved of such an intervention." Id. (some citations omitted) (citing Orion Pictures Corp. v. Writers Guild of Am., West, Inc., 946 F.2d 722, 725 n.2 (9th Cir. 1991) (holding an arbitrator's jurisdiction determination to be an adverse preliminary ruling, not a final, reviewable order under the Labor Management Relations Act, and declining to apply Aerojet-General)).

This Court agrees with the Landlords that Order No. 4 merely permitted the parties "to proceed **toward** class certification." See Motion to Vacate, Mem. in Supp. at 9 n.2. Order No. 4 did not threaten any "severe irreparable injury" to the Landlords. See Aerojet-Gen., 478 F.2d at 251. After Order No. 4 was issued, there was still a possibility that the Arbitration would not proceed as a class arbitration - for example, if no class could be certified. Thus, Order No. 4 did not present the type of extreme case where judicial review of a non-final arbitration order could be sought.

31

In contrast, Order No. 11 certified a class, requiring the Landlords to litigate Amuro's and Brantley's claims in a class arbitration. The Landlords' position is that Order No. 11 is ripe for judicial review because withholding consideration would result in hardship to them. See Motion to Vacate, Mem. in Supp. at 9. In other words, the Landlords argue that, unless Order No. 11 is vacated, it would impose severe irreparable injury upon the Landlords because it would require them to participate in a class arbitration that they did not consent to, and it would be impossible to undo the participation even if the Landlords later prevail in a petition to vacate the final award in the class arbitration. This situation is the type of extreme case that warrants judicial review of a non-final arbitration order. The Petition is a timely challenge to Order No. 11. Further, in Order No. 11, the Arbitrator "reaffirm[ed] his prior analysis and findings within Arbitration Order No. 4." [Shannon Decl., Exh. G (Order No. 11) at ¶ II.2.] Because Order No. 4 is part of the basis for Order No. 11, and because the Landlords could not seek immediate judicial review of Order No. 4, the instant case is also a timely challenge to Order No. 4.

D.   **Ruling**

Because there is complete diversity among the parties and the amount in controversy exceeds $75,000, diversity

jurisdiction exists in the instant case. Amuro and Brantley's

Motion to Dismiss is therefore denied.

## II.  Review of Order No. 4 and Order No. 11

The United States Supreme Court has stated that, under

the FAA,

> parties may agree to have an arbitrator decide
> not only the merits of a particular dispute but
> also "'gateway' questions of 'arbitrability,'
> such as whether the parties have agreed to
> arbitrate or whether their agreement covers a
> particular controversy." [Rent-A-Center, W., Inc.
> v. Jackson, 561 U.S. 63,] 68-69 [(2010)]; see
> also First Options [of Chicago, Inc. v. Kaplan],
> 514 U.S. [938,] 943 [(1995)]. We have explained
> that an "agreement to arbitrate a gateway issue
> is simply an additional, antecedent agreement the
> party seeking arbitration asks the federal court
> to enforce, and the FAA operates on this
> additional arbitration agreement just as it does
> on any other." Rent-A-Center, 561 U.S., at 70.

Henry Schein, Inc. v. Archer & White Sales, Inc., 586 U.S. 63,

67-68 (2019). Questions of arbitrability,

> which "include certain gateway matters, such as
> whether parties have a valid arbitration
> agreement at all or whether a concededly binding
> arbitration clause applies to a certain type of
> controversy" — are presumptively for courts to
> decide. Green Tree Financial Corp. v. Bazzle, 539
> U.S. 444, 452 (2003) (plurality opinion). A court
> may therefore review an arbitrator's
> determination of such a matter de novo absent
> "clear[] and unmistakabl[e]" evidence that the
> parties wanted an arbitrator to resolve the
> dispute. AT & T Technologies, Inc. v.
> Communications Workers, 475 U.S. 643, 649 (1986).

Oxford Health Plans LLC v. Sutter, 569 U.S. 564, 569 n.2 (2013)

(alterations in Oxford Health Plans).

The Supreme Court "has not decided whether the availability of class arbitration is a so-called 'question of arbitrability[,]'" <u>Lamps Plus, Inc. v. Varela</u>, 587 U.S. 176, 186 n.4 (2019) (citation omitted). However, the Ninth Circuit has held that the availability of "class arbitration is a gateway issue for a court to presumptively decide." <u>Shivkov v. Artex Risk Sols., Inc.</u>, 974 F.3d 1051, 1068 (9th Cir. 2020).

In the instant case, there is clear and unmistakable evidence that the parties agreed to delegate to the Arbitrator the issue of whether class arbitration was available. <u>See, e.g.</u>, Motion to Dismiss, Mem. in Supp., Exh. 3 (email dated 5/20/22 from the Arbitration Claimants' counsel to the Landlords' counsel, stating: "I appreciate you confirming with [the mediator] today our mutual understanding that Plaintiffs have agreed to proceed with mediation of their individual claims before addressing the arbitrability of class claims, which the parties agree will be submitted for resolution to the arbitrator selected at the conclusion of mediation if mediation is unsuccessful."); <u>see also</u> Motion to Vacate, Mem. in Supp. at 19 (recognizing that the Arbitration Claimants and the Landlords "agreed by email to delegate certain questions to the arbitrator, including whether the parties agreed to arbitrate on a classwide basis" (citing Shannon Decl., Exh. H (emails between counsel, dated from 6/20/22 to 7/20/22))).

The parties also agreed that Hawai`i Revised Statutes Chapter 658A would apply to the Arbitration. See Shannon Decl., Exh. D (DPR Agreement) (stating "[t]he parties, DPR, and Mr. Hiatt agree to follow and abide by" the DPR Rules); DPR Rules at pg. 2 ("Unless the parties agree in writing to some other governing law such as the United States Arbitration Act), these Rules are to be interpreted and applied pursuant to and in conjunction with **Hawaii Revised Statutes Section §658A, the Revised Uniform Arbitration Act or RUAA.**" (emphasis in original)). Hawai`i Revised Statutes Chapter 658A, referred to as the RUAA, is cited throughout the DPR Rules. For example, Rule 30 states, in relevant part:

> The Arbitrator(s) shall have the authority, during the arbitration proceeding, to issue Interim Rulings, Orders, and/or Partial Final Awards as necessary. Notwithstanding the foregoing, and except as otherwise provided by law, no Interim Ruling, Order and/or Partial Final Award shall be considered a final award subject to being confirmed pursuant to RUAA 22 and entered as a judgment by a court of competent jurisdiction pursuant to RUAA 25 nor vacated, modified and/or corrected pursuant to the provisions of RUAA 23 and 24.

DPR Rules at pg. 15. Rule 30 clearly indicates that the intent of the DPR Rules is that any judicial review be conducted pursuant to Chapter 658A. Chapter 658A therefore applies to the Landlords' challenge to Order No. 4 and Order No. 11.

35

A.    **Whether Chapter 658A Permits Review**

The Hawai`i state courts have not addressed the issue
of whether Chapter 658A permits review of an arbitrator's orders
during a pending arbitration. This Court must therefore "predict
how the [Hawai`i Supreme Court] would decide the issue using
intermediate appellate court decisions, decisions from other
jurisdictions, statutes, treatises, and restatements as
guidance." See Judd v. Weinstein, 967 F.3d 952, 955-56 (9th Cir.
2020) (quotation marks and citation omitted). In the instant
case, such a prediction can be made based on the plain language
of the relevant provisions of Chapter 658A. See Dicks v. Off. of
Elections, 155 Hawai`i 102, 105, 557 P.3d 831, 834 (2024) ("The
rules of statutory interpretation require us to apply a plain
language analysis when statutory language is clear." (citation
omitted)), *reconsideration denied sub nom.* Dicks v. Hawai`i,
No. SCEC-24-0000474, 2024 WL 3580334 (July 30, 2024).

In ruling on a petition to confirm an interim
arbitration order, this Court noted:

> Chapter 658A clearly authorizes arbitrators to
> issue interim awards and authorizes courts to
> confirm interim awards. Haw. Rev. Stat. § 658A-
> 8(b)(1) states that,
>
>> [a]fter an arbitrator is appointed and is
>> authorized and able to act:
>>
>>> (1) The arbitrator may issue such
>>> orders for provisional remedies,
>>> **including interim awards**, as the

36

> > arbitrator finds necessary to protect
> > the effectiveness of the arbitration
> > proceeding and to promote the fair and
> > expeditious resolution of the
> > controversy, to the same extent and
> > under the same conditions as if the
> > controversy were the subject of a civil
> > action . . . .

(Emphasis added.) . . .

RTI Connectivity Pte. Ltd. v. Gateway Network Connections, LLC,

CIV. NO. 22-00302 LEK-RT, 2022 WL 2981518, at *6 (D. Hawai`i

July 28, 2022) (some alterations in RTI Connectivity).

In Order No. 4, the Arbitrator found that "the right

to pursue a class action in an appropriate case is a 'remedy'

that may be granted under HRS § 658A-21(c)." [Shannon Decl.,

Exh. F (Order No. 4) at ¶ II.28.] Order No. 4 permitted the

Arbitration to proceed toward class certification, and Order

No. 11 certified the class. The class certification allowed

Amuro and Brantley to pursue their claims with the class's

claims. Under the circumstances here, Order No. 11 granted an

interim remedy that, in the Arbitrator's view, was "necessary to

protect the effectiveness of the arbitration proceeding and to

promote the fair and expeditious resolution of the controversy."

See Haw. Rev. Stat. § 658A-8(b)(1).

An order granting an interim remedy is an award that

memorializes a pre-award ruling pursuant to Hawai`i Revised

Statutes Section 658A-18, which states:

> If an arbitrator makes a pre-award ruling in
> favor of a party to the arbitration proceeding,
> the party may request the arbitrator to
> incorporate the ruling into an award under
> section 658A-19.[11] A prevailing party may make a
> motion to the court for an expedited order to
> confirm the award under section 658A-22, in which
> case the court shall summarily decide the motion.
> The court shall issue an order to confirm the
> award unless the court vacates, modifies, or
> corrects the award under section 658A-23 or 658A-
> 24.

Section 658A-18 expressly permits the filing of a judicial

action to confirm an interim award. While Section 658A-18 does

not expressly state that the filing of a judicial action to

vacate an interim award is permitted, the fact that

Section 658A-18 states that the motion to confirm shall be

---

[11] Hawai`i Revised Statutes Section 658A-19 states:

> (a)  An arbitrator shall make a record of an
> award. The record shall be signed or otherwise
> authenticated by any arbitrator who concurs with
> the award. The arbitrator or the arbitration
> organization shall give notice of the award,
> including a copy of the award, to each party to
> the arbitration proceeding.

> (b)  An award shall be made within the time
> specified by the agreement to arbitrate or, if
> not specified therein, within the time ordered by
> the court. The court may extend or the parties to
> the arbitration proceeding may agree in a record
> to extend the time. The court or the parties may
> do so within or after the time specified or
> ordered. A party waives any objection that an
> award was not timely made unless the party gives
> notice of the objection to the arbitrator before
> receiving notice of the award.

granted unless the award is vacated, modified, or corrected
pursuant to Sections 658A-23 or 658A-24, clearly indicates that
a motion to vacate (or a motion to modify or correct) an interim
arbitration award could be filed. This Court therefore predicts
that the Hawai`i Supreme Court would hold that Chapter 658A
permits a party to an arbitration to file a petition to vacate
an order granting the interim remedy of class certification.

To the extent that Chapter 658A permits judicial
review of an order granting the interim remedy of class
certification, DPR Rule 30 - which attempts to prevent any
review of an interim or partial ruling, order, or award – does
not override the applicable statutes. See DPR Rule 35 ("In the
case of any conflict between these Rules and the RUAA, the
provisions of the RUAA shall control.").

B.    **Relevant Vacatur Standards**

Hawai`i Revised Statutes Section 658A-23(a) states, in
pertinent part: "Upon motion to the court by a party to an
arbitration proceeding, the court shall vacate an award made in
the arbitration proceeding if: . . . . (4) An arbitrator
exceeded the arbitrator's powers[.]"

> It is well-established that "parties who
> arbitrate a dispute assume 'all the hazards of
> the arbitration process including the risk that
> the arbitrators may make mistakes in the
> application of law and in their findings of
> fact.'" Tatibouet [v. Ellsworth], 99 Hawai`i
> [226,] 233, 54 P.3d [397,] 404 [(2002)] (quoting

39

<u>Wayland Lum Constr., Inc. v. Kaneshige</u>, 90
Hawai`i 417, 422, 978 P.2d 855, 860 (1999)). The
<u>Tatibouet</u> court also noted, however:

> [T]his court has, thus far, reserved the
> phrase "exceeded their powers" as reference
> to arbitrators' improper consideration of
> matters outside the scope of the arbitration
> agreement:
>
> > [P]recisely because "the scope of an
> > arbitrator's authority is determined by
> > agreement of the parties," it follows
> > that "[a]n arbitrator must act within
> > the scope of the authority conferred
> > upon him by the parties and cannot
> > exceed his power by deciding matters
> > not submitted." <u>Clawson v. Habilitat,</u>
> > <u>Inc.</u>, 71 Haw. 76, 78, 783 P.2d 1230,
> > 1231 (1989) (citations omitted).
> > Accordingly, . . . where an arbitrator
> > has exceeded his or her powers by
> > deciding matters not submitted, this
> > court has held, pursuant to HRS § 658-
> > 9(4), that the resulting arbitration
> > award must be vacated. <u>Brennan v.</u>
> > <u>Stewarts' Pharmacies, Ltd.</u>, 59 Haw.
> > 207, 223, 579 P.2d 673, 681-82 (1978).
>
> <u>Mathewson [v. Aloha Airlines, Inc.]</u>, 82
> Hawai`i [57], 75, 919 P.2d [969], 987
> [(1996)] (some alterations in original and
> bracket omitted).

<u>Id.</u> at 235, 54 P.3d at 406.

<u>Krafchow v. Dongbu Ins. Co.</u>, 152 Hawai`i 248, 257, 525 P.3d 697,

706 (Ct. App. 2023) (some alterations in <u>Krafchow</u>).

> The Supreme Court of Hawai`i has
> acknowledged that "[v]irtually every state and
> federal court that has considered the preemptive
> effect of the FAA has concluded that . . . the
> FAA applies equally in state or federal courts."
> <u>Brown v. KFC National Management Co.</u>, 82 Hawai`i
> 226, 234, 921 P.2d 146, 154 (1996). Furthermore,

> the United States Supreme Court has held that
> "States cannot require a procedure that is
> inconsistent with the FAA, even if it is
> desirable for unrelated reasons." <u>AT & T Mobility
> LLC v. Concepcion</u>, [563 U.S. 333, 351,] 131 S.
> Ct. 1740, 1753 (2011) (holding that the FAA
> preempts California's judicial rule regarding the
> unconscionability of class arbitration waivers in
> consumer contracts). . . .

<u>Cnty. of Hawai`i v. Unidev, LLC</u>, No. CAAP-11-0000019, 2011 WL

4998491, at *2 (Hawai`i Ct. App. Oct. 17, 2011) (some

alterations in <u>Unidev</u>), *aff'd*, 129 Hawai`i 378, 301 P.3d 588

(2013).

> > [T]he FAA "preempts any state rule discriminating
> > on its face against arbitration — for example, a
> > law 'prohibit[ing] outright the arbitration of a
> > particular type of claim.'" <u>Kindred Nursing
> > [Ctrs. L.P. v. Clark]</u>, 581 U.S. [246,] 251, 137
> > S. Ct. 1421 [(2017)] (quoting <u>Concepcion</u>, 563
> > U.S. at 341, 131 S. Ct. 1740).
> >
> > But under our decisions, even rules that are
> > generally applicable as a formal matter are not
> > immune to preemption by the FAA. See <u>Lamps Plus,
> > Inc. v. Varela</u>, 587 U.S. ----, ----, 139 S. Ct.
> > 1407, 1415, 203 L. Ed. 2d 636 (2019); <u>Concepcion</u>,
> > 563 U.S. at 343, 131 S. Ct. 1740. Section 2's
> > mandate protects a right to enforce arbitration
> > agreements. That right would not be a right to
> > **arbitrate** in any meaningful sense if generally
> > applicable principles of state law could be used
> > to transform "traditiona[l] individualized . . .
> > arbitration" into the "litigation it was meant to
> > displace" through the imposition of procedures at
> > odds with arbitration's informal nature. <u>Epic
> > Systems [Corp. v. Lewis]</u>, 584 U.S. [497, 509],
> > 138 S. Ct. [1612,] 1623 [(2018)]. See also
> > <u>Concepcion</u>, 563 U.S. at 351, 131 S. Ct. 1740. And
> > that right would not be a right to arbitrate
> > based on an **agreement** if generally applicable law
> > could be used to coercively impose arbitration in
> > contravention of the "first principle" of our FAA

jurisprudence: that "[a]rbitration is strictly 'a matter of consent.'" <u>Granite Rock Co. v. Teamsters</u>, 561 U.S. 287, 299, 130 S. Ct. 2847, 177 L.Ed.2d 567 (2010) (quoting <u>Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.</u>, 489 U.S. 468, 479, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989)); <u>see also Lamps Plus</u>, 587 U.S., at ----, 139 S. Ct., at 1416; <u>Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.</u>, 559 U.S. 662, 685, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010).

Based on these principles, we have held that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party **agreed** to do so." <u>Id.</u>, at 684, 130 S. Ct. 1758. <u>See also Lamps Plus</u>, 587 U.S., at ----, 139 S. Ct., at 1412; <u>Epic Systems</u>, 584 U.S., at ---- – - ---, 138 S. Ct., at 1621–1623; <u>Concepcion</u>, 563 U.S. at 347–348, 131 S. Ct. 1740. The "'shift from bilateral arbitration to class-action arbitration'" mandates procedural changes that are inconsistent with the individualized and informal mode of arbitration contemplated by the FAA. <u>Id.</u>, at 347, 131 S. Ct. 1740 (quoting <u>Stolt-Nielsen</u>, 559 U.S. at 686, 130 S. Ct. 1758). As a result, class procedures cannot be imposed by state law without presenting unwilling parties with an unacceptable choice between being compelled to arbitrate using procedures at odds with arbitration's traditional form and forgoing arbitration altogether. Putting parties to that choice is inconsistent with the FAA.

<u>Viking River Cruises, Inc. v. Moriana</u>, 142 S. Ct. 1906, 1917–51 (2022) (emphases and some alterations in <u>Viking River</u>).

There is no provision in Chapter 658A addressing class arbitration. Even if Chapter 658A allows parties to be compelled to participate in class arbitration in the absence of express consent to class arbitration, Chapter 658A would be preempted by

the FAA. The Arbitrator appears to have recognized this and applied the Lamps Plus analysis in determining whether class arbitration was available. See Shannon Decl., Exh. F (Order No. 4) at ¶¶ II.4-5. If the Arbitrator made an error of law or fact in the Lamps Plus analysis of the Henke Lease and the Amuro Lease, that would have been a "hazard of the arbitration process" that the parties assumed. See Tatibouet, 99 Hawai`i at 233, 54 P.3d at 404. The Landlords, however, challenge what the Arbitrator considered beyond the Lamps Plus analysis of the Henke Lease and the Amuro Lease.

The Arbitrator first concluded that the leases between the Arbitration Claimants and the Landlords that had arbitration provisions (which included the Henke Lease and the Amuro Lease) did not satisfy the Lamps Plus test. See Shannon Decl., Exh. F (Order No. 4) at ¶ II.4. However, the Arbitrator went on to consider: the DPR Agreement, in which the parties agreed to the application of the DPR Rules; [id. at ¶¶ II.6-9;] the parties' agreements that were reflected in Order No. 2; [id. at ¶ II.24;] the experience of counsel; [id. at ¶ II.37;] and a federal court action in which class arbitration was requested, [id.]. The Arbitrator considered these additional circumstances in light of the policy favoring arbitration that is reflected in the cited provisions of Chapter 658A and Hawai`i case law. See id. at ¶¶ II.12, II.16, II.22, II.26-27.

43

The Arbitrator effectively found that the parties'
failure to expressly **exclude class arbitration** from the
agreements that they entered into during the Arbitration
constituted an affirmative agreement to participate in class
arbitration. This was more than a mere error of law or fact in
the interpretation of the relevant documents. The Arbitrator
treated the DPR Agreement as a separate agreement to arbitrate,
apart from the express arbitration agreements in the Henke Lease
and the Amuro Lease. The Hawai`i Supreme Court has previously
considered a version of DPR's agreement to arbitrate that was
substantively identical to the form that became the parties' DPR
Agreement here. See United Pub. Workers, AFSCME, Loc. 646, AFL-
CIO v. Dawson Int'l, Inc., 113 Hawai`i 127, 132, 149 P.3d 495,
500 (2006). In that case, the supreme court recognized that the
parties must "'manifest[] an objective intention to agree,' that
the DPR Arbitration Agreement constituted a **new** agreement to
arbitrate." Id. at 142, 149 P.3d at 510 (quoting Earl M.
Jorgensen Co. v. Mark Constr., Inc., 56 Haw. 466, 470, 540 P.2d
978, 982 (1975), and citing Restatement (Second) of Contracts
§ 20 ("There is no manifestation of mutual assent to an exchange
if the parties attach materially different meanings to their
manifestations and (a) neither party knows or has reason to know
the meaning attached by the other; or (b) each party knows or

44

each party has reason to know the meaning attached by the
other.")).

      Here, there is no evidence that the Landlords had an
objective intent to agree that the DPR Agreement constituted a
new agreement consenting to class arbitration, particularly
because the DPR Agreement does not expressly discuss
arbitration. The parties' DPR Agreement cannot constitute "an
affirmative contractual basis for concluding that the part[ies]
agreed" to class arbitration. See Lamps Plus, 587 U.S. at 185
(emphasis, citation, and internal quotation marks omitted).
Similarly, the parties' agreements that were memorialized by the
Arbitrator in Order No. 2 include that: "The Parties agree the
Arbitrator holds jurisdiction and authority to decide whether or
not this case may proceed as a class arbitration." [Shannon
Decl., Exh. F (Order No. 4), Exh. 3 at PageID.701 (Order No. 2
at ¶ 3).] This merely noted the parties' delegation agreement;
it was not a consent to participate in class arbitration.
Neither was any other agreement reflected in Order No. 2 a
consent to participate in class arbitration. Although both the
DPR Agreement and the agreements reflected in Order No. 2 were
binding on the parties as to the certain procedures and issues
in the arbitration proceedings, they did not constitute new
agreements to arbitrate. The only agreements to arbitrate
regarding Amuro and Brantley were in the Amuro Lease and the

45

Henke Lease. The Arbitrator exceeded his powers by determining
the delegated class arbitrability issue based upon agreements
and other circumstances beyond the parties' agreements to
arbitrate. See Mathewson, 82 Hawai`i at 75, 919 P.2d at 987.

Even if the Arbitrator is correct that Chapter 658A
and Hawai`i case law indicate that the State of Hawai`i has a
particularly "strong support for arbitration," [Shannon Decl.,
Exh. F (Order No. 4) at ¶¶ II.33-II.34,] and that Chapter 658A
would permit a party to be compelled to participate in a class
arbitration on the ground that the parties failed to exclude
class arbitration in their arbitration agreement, see, e.g., id.
at ¶ II.17, as to agreements to which the FAA applies, the State
"cannot require a procedure that is inconsistent with the FAA,
even if it is desirable for unrelated reasons." See Concepcion,
563 U.S. at 351.

Because the Arbitrator exceeded his powers in the
determination of the delegated class arbitrability issue, Order
No. 4 and Order No. 11 are vacated as to Amuro and Brantley.

C.    **Ruling**

The Landlords' Motion to Vacate is granted insofar as
Order No. 4 and Order No. 11 are vacated as to Amuro and
Brantley. Because the Landlords' request to vacate the contested
orders has been granted, this Court does not address the
Landlords' alternative Title 9 United States Code Section 4

46

request to compel Amuro and Brantley to arbitrate their claims
on an individual basis. <u>See</u> Motion to Vacate at 2.

To the extent that the Motion to Vacate seeks relief
as to the other Arbitration Claimants, the motion is denied
because the Landlords have not established that jurisdiction
exists over those claimants. The denial is without prejudice to
the Landlords' filing of: 1) an amended petition adding any
other respondent over whom there is diversity jurisdiction and
who had a lease that was substantially similar to either the
Henke Lease or the Amuro Lease; and 2) a motion to vacate Order
No. 4 and Order No. 11 as to the new respondents. If the
Landlords choose to file an amended petition and a new motion to
vacate, they must do so by **April 15, 2025.**

As to the Arbitration Claimants over whom diversity
jurisdiction is lacking, this Court has no authority to address
the arbitration of their claims, whether or not they had
arbitration clauses with their respective Landlord.

<b><u>CONCLUSION</u></b>

For the foregoing reasons, the Landlords' Motion to
Vacate Arbitrator's Class Certification Order or, in the
Alternative, to Compel Individual Arbitration, filed October 24,
2024, is GRANTED IN PART AND DENIED IN PART, and Amuro and
Brantley's Motion to Dismiss, filed November 22, 2024, is
DENIED. The Motion to Vacate is GRANTED insofar as the

47

Arbitrator's Order No. 4 and Order No. 11 are VACATED as to Amuro and Brantley only, and the Motion to Vacate is DENIED in all other respects.

The denial of the Motion to Vacate is WITHOUT PREJUDICE to the filing of an amended petition and a new motion to vacate as to other claimants described in this Order. If the Landlords choose to file an amended petition and a new motion to vacate, they must do so by **April 15, 2025.**

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, March 25, 2025.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
Senior U.S. District Judge

**ISLAND PALM COMMUNITIES LLC, ET AL. VS. KENNY AMURO, ET AL.; CV 24-00458 LEK-RT; ORDER:  GRANTING IN PART AND DENYING IN PART PETITIONERS' MOTION TO VACATE ARBITRATOR'S CLASS CERTIFICATION ORDER OR, IN THE ALTERNATIVE, TO COMPEL INDIVIDUAL ARBITRATION; AND DENYING RESPONDENTS' MOTION TO DISMISS**